## GEORGE A. McKINLEY and Others v. CHARLES J. MACBETH.[1]

January 6, 1911.

Nos. 16,626—(16).

**Value of property — examination of witnesses thereon.**
> The extent to which witnesses may be examined or cross-examined upon the subject of the value of property having no fixed market price rests in the discretion of the trial court.

[1] Reported in 129 N. W. 216, 389.

**Parol evidence of judgment excluded.**

Parol evidence of the existence of a judgment of record in the court in which the action was on trial *held* properly excluded.

**Modification of written contract by parol.**

The rule that a contract for the sale or exchange of real property, required by statutes to be in writing, cannot be modified by subsequent parol agreement, has no application to a written contract so modified, which subsequently has been fully performed.

**Verdict sustained by evidence.**

Evidence *held* to sustain the verdict, and that the record presents no reversible error, either in the rulings of the court in the admission or exclusion of evidence or in its charge to the jury.

Action in the district court for Blue Earth county to recover $10,000 for breach of a written contract for the exchange of certain lands for improved property belonging to defendant. The complaint alleged that defendant, for the purpose of defrauding plaintiffs, conveyed his property to innocent purchasers and refused to convey his property to plaintiffs, or to cause it to be conveyed. The answer alleged that the written contract by mutual consent was annulled, and the parties entered into a verbal agreement by which defendant should convey his property to one Samson. The reply was a general denial. The facts are stated in the opinion. The case was tried before Pfau, J., and a jury which returned a verdict in favor of defendant. From an order denying plaintiffs' motion for a new trial, they appealed. Affirmed.

*H. L. & J. W. Schmitt,* for appellants.

*W. R. Geddes* and *S. B. Wilson,* for respondent.

BROWN, J.

Action to recover damages for the alleged breach of a contract for the exchange of certain lands and real property. Defendant had a verdict, and plaintiffs appealed from an order denying a new trial.

The facts are as follows: Plaintiffs, George A. and Alice L. McKinley, had, prior to the transaction here involved, entered into an executory contract for the purchase by them of certain lands, a part of which were in the state of North Dakota, and a part in this

state. The land was incumbered to the extent of $8,600. On or about November 16, 1905, their said contract being then in force, and a valid and binding obligation upon their part and upon the part of the vendor therein, the McKinleys entered into a contract with defendant by the terms of which plaintiffs agreed to assign the contract to defendant in consideration of defendant's agreement to deed and convey to plaintiffs certain improved real property owned by him in the city of Mankato, this state. The contract was in writing, and provided that the assignment of plaintiffs' contract should be subject to incumbrances against the land aggregating $8,600, and that the conveyance of defendant's property should be subject to incumbrances to the amount of $7,000. Defendant thereafter made certain objections to the contract, based upon what he considered misrepresentations concerning the Dakota land. It is not necessary to refer to this matter in detail. The misunderstandings were adjusted, and plaintiffs formally assigned their purchase contract to defendant, and he accepted and received the same.

It is the contention of plaintiffs, and herein is the foundation of their action, that defendant never at any time conveyed his Mankato property to plaintiffs, and has at all times failed and neglected to do so. Therefore they demand damages for his breach of the contract. Defendant denied any breach of the contract on his part.

The facts bearing upon the question whether defendant failed to perform are as follows: At the time of the transaction defendant was indebted to the First National Bank of Mankato in the sum of about $7,000, a part of which was secured by mortgage upon the property defendant proposed to exchange with plaintiff. As we understand the situation, it was proposed to consolidate all prior mortgages in a new one to be executed by defendant to the bank for the total indebtedness of $7,000. The officers of the bank were informed of the contract of exchange, but refused to rearrange its mortgages, unless some responsible person would assume and agree to pay the mortgage debt.

Defendant presented the matter, together with his other objections to the original contract, to plaintiffs, and to facilitate a completion of the transaction it was then orally agreed, so defendant

claims, that the original contract of exchange should be modified in certain respects not here material, and also to the effect and as requiring defendant to convey his property to one Samson, instead of the plaintiffs. Defendant also claims that it was further then mutually agreed between plaintiffs and defendant that plaintiffs should procure from Samson an agreement on his part to assume and agree to pay the indebtedness upon the property so to be conveyed by defendant, and, further, that it was then agreed that the deed from defendant should so provide, and be executed and delivered to the bank, to be by it delivered to Samson.

There is no question but that the plaintiffs requested that the deed be made to Samson; the purpose being to consummate another real estate bargain then existing between those parties. Samson, however, had no contractual connection with the case at bar. Defendant contends that, pursuant to this modified contract, plaintiffs assigned their purchase contract to defendant, and defendant in turn executed in due form a conveyance of his Mankato property to Samson, and delivered the same to the bank, as required by the terms of the new agreement. The deed contained a clause by which Samson assumed and agreed to pay the incumbrance of $7,000. Samson refused to accept the deed, because of this assumption clause, and also because of some objectionable details in respect to partial payments upon the debt. The transaction was finally completed in this manner about December 6, 1905.

The substantial controversy in the court below ranged about the question whether by the modified agreement plaintiffs undertook and agreed to procure Samson to assume the indebtedness against defendant's property. The trial court charged the jury that if such was the agreement between the parties, and defendant's deed to Samson was executed and delivered to the bank in conformity therewith, defendant was not in default, had not failed or refused to comply with the contract, and plaintiffs could not recover. There was no error in this disposition of the case.

Plaintiffs' motion for a new trial was based upon the usual grounds of errors in law, and that the verdict is not justified by the evidence, and also newly-discovered evidence. These grounds are specified

in the assignments of error in this court, and we will consider them in the order discussed in the briefs.

1. During the cross-examination of plaintiff George A. McKinley, counsel for defendant drew out, over the objection of plaintiffs, the fact that at the time of the transaction in question plaintiffs were in default in one of the payments under the purchase contract; that is, that they were behind in one payment. In its charge the court referred to this in reciting the case to the jury, and stated "that for the purpose of saving this land and saving something from them, he sought to make a trade or deal, and that he applied to the defendant in this case for the purpose of making a deal with him." We discover in this no error of a nature to justify a reversal. Of course, it was wholly immaterial whether plaintiffs were behind in their payments. But it was undoubtedly true that they sought by the exchange with defendant to make a profit, the natural and reasonable purpose of all real estate dealers. Clearly no prejudice resulted from this evidence, nor from the remarks of the court. The issues were thereby neither clouded nor the jury misled. Farnham v. Thompson, 32 Minn. 22, 18 N. W. 833.

2. The exchange contract called for a deed from defendant free and clear of all incumbrances, save a mortgage for $7,000. On cross-examination of defendant, counsel asked the question: "Now, at the time this contract was entered into between you and Mr. McKinley, there was a judgment outstanding and docketed against you in this county in favor of the Standard Lumber Company, wasn't there?" An objection to the question was sustained, as incompetent, irrelevant, and immaterial. There was no error in the ruling. The judgment record was the best evidence. There was no effort to produce it, and the question ruled out was not followed by an offer to show the existence of such a judgment. And, moreover, the refusal of Samson to accept the deed from defendant was based upon the assumption clause therein, and not for defects in the title, or because of liens upon the land other than those represented by the $7,000 mortgage.

3. The evidence offered by both parties in reference to the value of the North Dakota lands took a wide range, both upon direct

and cross-examination of the witnesses. Perhaps some testimony not strictly admissible was received over the objection and exception of plaintiffs; but it was not of a character to justify a reversal. The extent to which a witness as to the value of property may be cross-examined rests in the sound discretion of the court, in the exercise of which in this case we discover no abuse. Subsequent to the consummation of the contract between plaintiffs and defendant, defendant hypothecated the executory contract received by him from plaintiffs to the bank at Mankato as security. The bank subsequently sold the land, and its cashier was permitted to testify the price received therefor. This testimony was probably inadmissible; but in view of the whole record, and the fact that the scope of evidence to prove the value of property not having a fixed market price rests largely in the discretion of the court, and the further fact that the court in its instructions expressly stated to the jury, and the charge had reference to this and other like testimony, that "what any particular piece of land has sold for is not evidence of the value of this property in question," we are of opinion that no prejudice resulted to plaintiffs. The charge sufficiently cured whatever error may have been committed in receiving the testimony.

4. Counsel for appellants are entirely right in the contention that a contract for the sale of the land, required by statute to be in writing, cannot, so long as the whole remains executory, be modified by parol agreement. Scheerschmidt v. Smith, 74 Minn. 224, 77 N. W. 34. But the rule has no application where the modified contract has been performed. Siebert v. Leonard, 17 Minn. 410 (433); Blake v. J. Neils Lumber Co., 111 Minn. 513, 127 N. W. 451; McClay v. Gluck, 41 Minn. 193, 42 N. W. 875. Defendant's evidence tended to show a complete performance of the orally-modified contract, and upon this theory the case was sent to the jury by the court. In this there was no error.

After the contract had been modified by the alleged parol agreement, plaintiffs entered into a further written agreement with Samson, by which Samson agreed to accept a deed from defendant, and to assume and agree to pay the mortgage indebtedness. This was in harmony with the claim of defendant that plaintiffs orally agreed

to procure Samson to do so. This written contract was received in evidence over plaintiffs' objection. The objection was not well taken. The contract was admissible, not as binding Samson, but as against plaintiffs, who thereby corroborated the claim of defendant in this respect. The contract was entered into by Samson through a person who, it is claimed, was his agent. We discover no evidence, however, of such agency. But this is not important. There is no question but that plaintiffs executed the contract, and it was admissible against them.

5. Considerable evidence was offered relative to the value of the Mankato property, its rental value, that defendant ceased collecting rents therefrom after the delivery of his deed, and that thereafter Samson, through one Babcock, who testified that he was the agent of Samson, for a time collected the rent and took charge of the property. All this evidence tended to corroborate the claim of defendant that he had fully performed the contract, and that Samson agreed in fact to assume the mortgage indebtedness; and, though perhaps so far remote that it might properly have been excluded, there was no prejudicial error in its reception.

For the same reason, the submission of the special questions pertinent to this branch of the case, though wholly impertinent to the principal issues, was without prejudice. It is discretionary with the trial court whether special issues shall be submitted to the jury, and the discretion extends to the character of the questions, so long as they are pertinent to some branch of the case. It is clear, however, that the parties are not concluded by the determination of these questions by the jury respecting their rights in the Mankato property. The question whether defendant is liable to either plaintiff or Samson for the rents collected by him, or for the sale of part of the property subsequent to his conveyance thereof to Samson, is not involved in the action, and must be tried out in some other litigation. The court below properly so charged the jury. All evidence received upon the subject, together with the special verdicts, was simply corroborative of defendant's contention that plaintiffs were to procure Samson to assume the indebtedness upon that property.

No other force or effect can be given either to the evidence or to the special verdicts.

6. A careful examination of the charge of the court discloses no reversible error. The newly-discovered evidence has reference mainly to the conduct of Samson, and his rights and liabilities in the matter, in no manner, other than collaterally, involved in the action, and there was no abuse of discretion in denying the motion upon that ground. The evidence sustains the verdict.

Order affirmed.

SIMPSON, J., took no part.

On January 20, 1911, the following opinion was filed:

PER CURIAM.

Counsel for plaintiffs, on application for a rehearing, call attention to the failure of the opinion heretofore filed specially to refer to one of the assignments of error challenging the refusal of the trial court to give one of his requests for instructions. On further examination of the record we find this assignment not well taken.

The written contract for the exchange of properties was subsequently modified by a parol agreement. Defendant contended that it was modified in three respects. Plaintiffs admitted the modification in two respects, but denied the third. There is no question but that the contract as modified in the respects conceded was performed by both parties. Such being the fact the bar of the statute of frauds was thereby removed from the entire contract. Substantial part performance is sufficient for this purpose. 3 Dunnell, Dig. § 8885. Plaintiffs cannot accept performance of the undisputed changes and reject the other.

Application for rehearing denied.

JAGGARD and SIMPSON, JJ., took no part.